UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) NO. 1:04-cr-10229-MLW-ALL |
| | ) |
| V. | ) |
| | ) |
| CARLI HOLLAND | ) |
| | ) |
| Defendant. | ) |

## **DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

## **FACTS**

The Defendant Carli Holland (the "Defendant"), in the above-numbered Indictment and through Counsel, moves this Court to suppress any and all statements that were made by her as a result of a custodial interrogation of her on June 30, 2004 inside the United States District Court lobby area. The defendant specifically requests that this Court suppress any and all statements made by the defendant after she was ordered not to leave the courthouse lobby area by court officials.

In support of this motion the defendant through counsel states as follows:

On June 30, 2004, the defendant was allegedly in attendance at a hearing in the case of <u>United States v. Bryan Moran</u>, et al , Criminal No. 02-10136 (REK) It is alleged by the government that the defendant and her companion, Alysha Moran, the sister of the defendant Moran made threatening remarks to one Lee Anne Bridge, an alleged cooperating witness in this case. These remarks were allegedly made by the defendant

1

outside of Courtroom 3 after the hearing. CSO O'Meara learned of these alleged remarks to Ms. Bridge when he left and went outside of the courtroom and spoke with Ms. Bridge. Upon seeing and briefly speaking with Ms. Bridge, O'Meara ran over to the rotunda and ordered, by shouting down into the rotunda and over his radio, that the front entrance security not let the defendant and Alysha Moran depart the courthouse. After O'Meara shouted his orders to the rotunda, the two women were detained at the front door of the courthouse inside the lobby. According to discovery provided to the defendant by the government, lead CSO Jack Brosnahan ordered CSO John Gillespie to take information from two young ladies seated in the lobby. The defendant maintains that when she and Alysha Moran began going through the glass doors in the lobby, they were ordered to remain in the building and move away from the doors over to the area near the courthouse x-ray machine. At that time the defendant maintains that the two women were asked what happened and that they made statements to the official asking the questions. In response to this question it is alleged that they responded with statements that they had done something they should not have and they asked if they could apologize. Additionally, they were both asked to produce identification which, according to the discovery provided to the defendant they both produced, and their information was recorded by CSO Gillespie, the official who took the information. At no time did any official inform the two women of their Miranda rights after they were ordered not to leave the building and asked questions about what occurred outside the courtroom after Mr. Moran's hearing.

ARGUMENT

The defendant's statements after being ordered to stop were statements made in the context of custodial interrogation and must be suppressed. Miranda v. Arizona, 384 U.S. 436 (1965). "The prosecution may not use statements . . . stemming from **custodial interrogation** of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.". Miranda v. Arizona, 384 U.S. 436,444 (1965) The protections of Miranda extend beyond actual questioning by the police to include the "functional equivalent" of interrogation, meaning "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301(1980). Ms. Holland was asked, "what happened up there"? This was clearly a question designed to issue a response after a clear order not to leave by uniformed court security officers acting in their official capacity.

The *Miranda* warnings are required once a person is subjected to **custodial interrogation.** Stansbury v. California, 511 U.S. 318, 322 (1994); United States v. Quinn, 815 F.2d 153, 160 (1st Cir. 1987). In assessing whether the defendant was in custody, a court must first "determine what were the circumstances surrounding the exchange between the government agent[s] and the suspect. This inquiry is distinctly factual." United States v. Trueber, 238 F.3d 79, 93 (1st Cir. 2001). Next, given those circumstances, a court must determine "whether and when a reasonable person in [the defendant's] position would have believed that he was actually in police custody and being constrained to a degree associated with formal arrest." *Id.* (quoting United States v.

Streifel, 781 F.2d 953, 962 (1st Cir. 1986)); United States v. Nishnianidze, 342 F.3d 6, 13 (1st Cir. 2003); *see* Commonwealth v. Larkin, 429 Mass. 426, 432, 708 N.E.2d 674 (1999) (explaining that the test of custody is objective: "whether a reasonable person in the suspect's shoes would experience in the environment in which the interrogation took place as coercive").

In making its custody determination, a court should consider "whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation." Nishnianidze, 342 F.3d at 13 (quoting United States v. Masse, 816 F.2d 805, 809 (1st Cir. 1987)); *see* Trueber, 238 F.3d at 94-95 (no custody during a *Terry* investigative stop that lasted no more than fifteen minutes, took place in neutral surroundings, involved no more than two of five officers in direct proximity to the suspect, and during which the officers used no threats or physical restraints); *see* Masse, 816 F.2d at 809-10 (no custody where the agents approached the defendant on a public sidewalk in the afternoon, the agents were not in uniform, they identified themselves immediately upon approaching the defendant and did not engage in or threaten physical coercion, and the interrogation was brief). The officers' subjective intent, such as the intent to arrest the suspect at some point, if undisclosed, is irrelevant to the custody determination. Stansbury, 511 U.S. at 319, 323; Trueber, 238 F.3d at 92.

The defendant's position in this matter is that she and her companion Alysha Moran were stopped while trying to leave the United States Courthouse by courthouse security personnel. The discovery provided by the government discloses that the security

4

personnel were ordered to stop these individuals, obtain information from them and in fact they did execute that order and further ordered the defendant and her companion to produce identifying information. Their conduct was not phrased as a request to stop, but rather a direct order to stop and relocate to another area of the courthouse lobby. Although the discovery is unclear as to how many court security officers engaged in the stop, the defendant maintains at least two officers interfered with her exit from the courthouse. It is unclear when during their detention, that they were asked to produce identification for the purposes of recording the information, however, the defendant recalls that they were asked what happened after the courthouse personnel detained them in the lobby. Clearly, although this detention was shorter than other detentions where Miranda warnings have not been required, the location, a federal courthouse where the suspects have been **specifically ordered not to leave** can hardly be characterized as a familiar or comfortable surrounding for the defendant. Also, being asked a specific question designed to elicit a response and produce identification for the purpose of recording that information, is more coercive than a sidewalk or traffic stop where it is ambiguous to the detainee whether the police are going to arrest the suspect. United States v. Trueber, 238 F.3d 79, 93 (1st Cir. 2001). Although the detention was relatively short in duration, five to ten minutes, it was clear to the defendant and her companion that they were not free to leave at the very outset of the intrusion. The government cannot argue that it is not clear whether the defendant was objectively free to leave in light of the court security personnel's direct order not to leave the building. By design, this encounter rose to the level of a custodial interrogation and the defendant's statements after the stop must be suppressed.

THE DEFENDANT REQUESTS AN EVIDENTIARY HEARING ON THIS MOTION

> Respectfully submitted,
> CARLI HOLLAND,
> Defendant,
> By Counsel:
>
> '/s/Walter H. Underhill, Esquire'
> WALTER H. UNDERHILL
> 66 Long Wharf
> Boston, Massachusetts   02109
> (617) 523-5858

DATED: April 28, 2005

RULE 7.1 CERTIFICATION

     The parties have conferred on this motion and the parties have not been able to resolve the factual or legal issues raised in this motion.

SIGNED:   '/s/Walter H. Underhill, Esquire'_____

DATE:   _____April 28, 2005_____