UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL NO. 04-CR-10229 (MLW) |
| V. ) | |
| ) | |
| CARLI HOLLAND ) | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

### INTRODUCTION

The United States of America, through its undersigned attorneys, hereby opposes Defendant's Motion to Suppress Statements because the incriminating statements defendant Carli Holland ("Holland") made to Court Security Officer ("CSO") John Gillespie ("Gillespie") were not made during a custodial situation necessitating Miranda warnings for the following reasons: (1) Gillespie spoke with Holland and Alyssa Moran in the public rotunda of the United States District Court for no more than 5 minutes, unaided by other court personnel; (2) Holland voluntarily offered the inculpatory statements; (3) Gillespie was ordered to take only identifying information from defendant and had no knowledge of the alleged crime for which defendant is charged; and (4) after this brief process of taking identifying information, defendant was told she was free to leave.

**FACTS**

At approximately 9:30 AM on June 30, 2004, CSO William O'MEARA was acting as a security marshal in Courtroom 3, John Joseph Moakley United States Courthouse, Boston, MA for a hearing on United States v. Bryan Moran, et al., Criminal No. 02-10136 (REK). [See generally, Affidavit of Task Force Agent Todd Prough dated July 1, 2004 for facts leading up to Holland's statements made to CSO Gillespie, Exh. 1]. CSO O'MEARA observed only two spectators in the courtroom who were two females later identified as defendant CARLI HOLLAND and ALYSHA MORAN ("MORAN"). During the hearing, CSO O'MEARA needed to verbally advise HOLLAND and ALYSHA MORAN to not talk in the courtroom during the hearing. Both individuals ceased their discussion. At 10:00 AM when the hearing was complete, HOLLAND and ALYSHA MORAN departed Courtroom 3. Within a couple of minutes of the hearing completion, CSO O'MEARA also departed Courtroom 3. Upon exiting, he discovered a female, later identified as LEE ANNE BRIDGE, visibly distraught, in tears and talking with Deputy U.S. Marshal SACCARDO outside of Courtroom 3. CSO O'MEARA approached BRIDGE, Deputy U.S. Marshal SACCARDO, and BRIDGE's acquaintance, SCOTT CAMPBELL. Deputy U.S. Marshal SACCARDO overheard a commotion when he was walking off the elevator, and approached BRIDGE when he saw her in tears. CSO O'MEARA inquired with BRIDGE as to what was wrong, and BRIDGE informed CSO O'MEARA that two females had verbally threatened

her.  BRIDGE identified the females as the two females that had just walked out of Courtroom 3.  CSO O'MEARA ran to the rotunda of the Courthouse, and ordered, both through a verbal shout and over walkie-talkie, the front entrance security guards to not let HOLLAND and ALYSHA MORAN depart the courthouse.  HOLLAND and ALYSHA MORAN were thereby stopped, and asked to wait at the front entrance security checkpoint.

On June 30, 2004, at approximately 10:15 a.m., CSO Gillespie was working outdoor security at USDC when Lead CSO Jack Brosnahan ordered him to get identifying information from the two women seated at the bench on the right hand side of the courthouse rotunda after entering the two sets of doorways to the courthouse.  [Gillespie Aff., Exh. 2, Par. 2].  He was not informed as to why he was taking their information.  [Id.]  CSO GILLESPIE told the two women he needed to get their information but that he did not know why.  [Id.]  He asked them if they could not get into the Courthouse.  [Id.]  They stated that they had done something that they knew they should not have and asked whether they were in trouble and whether they could apologize to someone.  [Id.]  CSO Gillespie answered that he did not know what they were talking about.  [Id.]  In sum and substance, they said they were upstairs in the Court and had words with people up there.  [Id.]  CSO Gillespie then wrote down their identifying information.  [Id.]  During this period, no other officers

assisted Gillespie in talking with the two women. [Id.] When CSO Gillespie finished taking their information, he saw CSO Brosnahan and told Brosnahan he took the information. [Id.] Brosnahan then told the two women they could leave. [Id.] The process of obtaining identifying information took no more than five (5) minutes. [Id.]

### DEFENDANT HAS FAILED IN HER BURDEN TO DEMONSTRATE THAT HER CONSTITUTIONAL RIGHTS WERE VIOLATED IN NOT RECEIVING MIRANDA WARNINGS

Defendant has set forth no affidavit or other documentary evidence to support the contention that she was in custodial custody and subject to custodial interrogation requiring Miranda warnings. Defendant has not made a sufficient showing to even require an evidentiary hearing. "Evidentiary hearings on motions to suppress are required only where a defendant makes a sufficient showing. . . . The burden is on the defendant to allege facts 'sufficiently definite, specific, detailed, and non conjectural, to enable the court to conclude that a substantial claim is presented.'" United States v. Calderon, 77 F.3d 6, 9 (1st Cir. 1996) (citing United States v. Lewis, 40 F.3d 1325, 1332 (1st Cir. 1994) (holding no hearing was required as defendants' affidavits in support of motion to suppress did not allege facts that were sufficiently definite, specific, detailed and thus the factual matters were essentially uncontested)). Even assuming the facts as set forth in defendant's motion are true,

Holland's statements should still be suppressed as a matter of law.

As the Supreme Court has clearly held "police officers are not required to administer Miranda warnings to everyone whom they question." <u>Oregon v. Mathiason</u>, 429 U.S. 492 (1977). It is well settled that a defendant must be informed of his basic constitutional rights only when he is <u>arrested</u> and subjected to <u>custodial interrogation</u>. See <u>Illinois v. Perkins</u>, 496 U.S. 292, 297 (1990); <u>Rhode Island v. Innis</u>, 446 U.S. 291, 298-303 (1980). In this case, (1) Holland was not in custody and (2) Holland was not subject to any custodial interrogation. Therefore, no <u>Miranda</u> warnings were necessary.

First, Holland was not in custody. [<u>See</u> CSO Gillespie's Affidavit, attached as Exhibit 1]. In determining whether an interview is "custodial," courts look at a number of factors. Among them are, "whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation." <u>United States v. Masse</u>, 816 F.2d 805, 809 (1st Cir. 1987) (quoting <u>United States v. Streifel</u>, 781 F.2d 953, 961 n. 13 (1st Cir. 1986)). "Miranda is not triggered simply because a person detained by the police has reasonable cause to believe

that he is not free to leave. Rather a host of factors must be considered in order to determine whether the suspects freedom of action is curtained to a degree associated with formal arrest." Striefel, 781 F.2d at 961. Here, the conversation took place in a neutral location for a brief time. Holland was stopped in the public rotunda of the Courthouse where she and Moran were asked for identifying information by CSO Gillespie, without the aid of any other officers, for no more than five minutes, at which time they were told they could leave. See United States v. Masse, 816 F.2d 805, 809 (1st Cir. 1987) (agents' request that defendant speak with them on street did not create custodial situation); Mathiason, 429 U.S. 492 (defendant not in custody when he went to the police department voluntarily and police falsely told him they found defendant's fingerprints a the crime scene). Thus, Holland was not constrained "to a degree associated with formal arrest" such that she could be considered in custody at the time of her incriminating statements. See Streiffel, 781 F.2d at 961.

Second, Holland was not subject to custodial "interrogation" when CSO Gillespie asked her for identifying information. Interrogation is "express questioning or its functional equivalent," Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980), that is, "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating

6

response from the suspect." Id. at 301. CSO Gillespie could not have engaged in any "questioning likely to elicit an incriminating response" when he did not even know why he was obtaining Holland and Moran's identifying information. [See Gillespie Aff., Par. 2]. In fact, Gillespie thought the reason he was asking them for their information might be because they did not have identification to get into the courthouse--he in fact asked the two whether they did not have identification. [Id.]

This is when Holland and Moran blurted out the incriminating statements with no prompting at all by CSO Gillespie. As Miranda itself made clear, "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." United States v. Miranda, 384 U.S. 436, 478 (1966). Here, Holland spontaneously and voluntarily admitted to doing something wrong and in fact asked CSO Gillespie if she could apologize to someone. Therefore, Holland's rights were not violated when she was merely asked for identifying information and then blurted out the incriminating statements.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Suppress Statements should be denied.

Dated: May 23, 2005

>                     Respectfully Submitted,
>
>                     MICHAEL J. SULLIVAN
>                     United States Attorney
>
>                     By: _____
>                         CYNTHIA W. LIE
>                         ASSISTANT U.S. ATTORNEY

document was served upon
appearing pro se and) the attorney
for each other party by mail on

5/23/05