UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) NO. 1:04-cr-10229-MLW-ALL) |
| | ) |
| | ) |
| V. | ) |
| | ) |
| | ) |
| CARLI HOLLAND | ) |
| | ) |
| | ) |

**DEFENDANT'S SENTENCING MOTION AND MEMORANDUM
FOR DOWNWARD DEPARTURES PURSUANT TO THE FEDERAL
SENTENCING GUIDELINES AND
AS TO 3553 (a) FACTORS**

Carli Holland,("the Defendant") in the above-numbered Information and through Counsel, submits the following Motion For Downward Departures pursuant to the United States Sentencing Guidelines and 18 U.S.C. 3553 (a) factors.

The defendant pled guilty to 18 U.S.C. 1512 (d) which carries a statutory maximum sentence of one year in federal prison. The United States Probation Department conducted a pre sentence investigation and prepared a presentence report. As part of their investigation Probation calculated the applicable sentencing guidelines to be at Level 19 with a Criminal History Category I. The applicable guideline, however, is one year of incarceration since that is the maximum punishment allowed by the statute, 18 U.S.C. 1512 (d).

At the outset, the defendant moves this Honorable Court to depart under the Sentencing Guidelines from the applicable guideline of one year incarceration. The grounds upon which the defendant relies under the Guidelines are as follows:

I.     U.S.S.G. Sec. 5K2.20  (Aberrant Behavior)

II.    U.S.S.G. Sec. 5H1.6 (Family Ties and Responsibilities)

III.   U.S.S.G. Sec. 5K2.0 ( c ) (Multiple Circumstances)

## I. ABBERANT BEHAVIOR
## U.S.S.G. Sec. 5K2.20

Pursuant to U.S.S.G. Sec. 5K2.20 (b)  the Federal Sentencing Guidelines provides that a court The court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life. U.S.S.G. Sec. 5K2.20 (a) and (c) provide limitations upon the applicability of this guideline even where the requirements of  U.S.S.G. Sec. 5K2.20 (b) are met, however, none of those limitations relate to the facts of this case. Additionally the Application Notes to this section provide even greater guidance to the court in outlining relevant factors the court should consider in applying this downward departure. In Application Note 3. <u>Other Circumstances to Consider</u>, the note goes on to say that  "In determining whether the court should depart under this policy statement, the court may consider the defendant's (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense." U.S.S.G. Sec. 5K2.20 (Application Note 3 ).

The facts of this case fit each and every one of the requirements U.S.S.G. Sec. 5K2.20 (b) and the Application Notes to the section:

**(1) Was Committed Without Significant Planning**

It is clear from the Government version of the facts that the defendant was in a severely depressed and anxious emotional state of mind at the time she made the statements to Lee Anne Bridge the alleged victim. Her boyfriend , Bryan Moran, with whom she had a romantic relationship which evolved after a long time childhood friendship ,was facing a seriously extended period of time in jail based upon the testimony of Lee Anne Bridge. The date of the offense occurred after a trial and many court hearings regarding the appropriate sentencing of Mr. Moran. The defendant knew of Lee Anne Bridge's identity and role in the prosecution long before the threats were made, and at no time did the defendant attempt to in any way threaten Ms. Bridge prior to this hearing. The defendant's conduct clearly was the result of an emotional overload resulting in an emotional outburst making threats that were very likely never to be carried out by the defendant. This is further borne out by the defendant's father's comment to the Probation Officer Jesse Gomes that "he is extremely proud of his daughter and states that this offense is due solely to her occasional tendency to be a "loudmouth" and is not at all indicative of her character." P.S.I. page 10 Paragraph 50. This stage of the conduct fulfills the requirement of Application Note 3 (A) mental and emotional conditions and (D) motivation for committing the offense.

**(2) Was Of Limited Duration**

  This offense was not only not preplanned but clearly was of limited duration. Again citing the Governments version of the events, this whole episode took no more than five to ten minutes at the most. It also should be noted that the defendant immediately being approached by court security personnel was extremely cooperative, scared in a manner which may be inferred as " oh my, what have I done" and instantly began asking if they were in trouble, said that she had done something she knew she should not have and asked if there was someone she could apologize to. This conduct also supports the departure according to Application Note 3 (A) mental and emotional conditions and (E) efforts to mitigate the effects of the offense." U.S.S.G. Sec. 5K2.20.

**(3) Represents A Marked Deviation By The Defendant From An Otherwise Law Abiding Life**

  Clearly the conduct of the defendant which forms the basis of this charge marks a clear deviation from an otherwise law abiding life. If this were the defendant's first crime and it was of a different nature, the absence of a criminal record or arrest might not strongly support the existence of an otherwise law abiding life; dealing in drugs or contraband, robbery or even murder for example. Here, this type of crime, making threats to a witness, it would seem happens only once in most cases. This suggestion is further supported by Carli Holland's life prior to her charges in this case by evaluating factors stated in Application Note 3 (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense." U.S.S.G. Sec. 5K2.20 (Application Note 3 ). As stated above, Ms. Holland's emotional state at the time of the offense is the most

likely and compelling reason why she committed it. Her employment record since she left high school in the tenth grade has been exemplary and rigorous. Although she may not qualify as someone who has a record of prior good works, she certainly has demonstrated by her lifestyle in less than advantageous circumstances to rise above and succeed more than many others similarly situated. Finally, her immediate admission of guilt after the offense and her attempts to apologize demonstrate that she sought to mitigate the effects of the offense.

In the case of United States v Smith 387 F3d 826 (CA 9 Montana 2004), the Ninth Circuit reversed the District Court's decision not to depart downward for abberant behavior on facts actually very similar but somewhat more serious than the facts in this case. In that case the defendant, the next door neighbor of a reporting witness, went to the witnesses' house , entered without permission and made several threatening remarks, including a threat to kill the witnesses and their family. The parents of the witnesses were sufficiently fearful of harm that one of the parents actually pointed a gun at the defendant and her husband causing them both to retreat.

The District Court in that case refused to depart downward and made findings that the conduct was committed with significant planning, was not of limited duration and did not represent a marked deviation by the defendant from an otherwise law abiding life. The Ninth Circuit ruled that the District Court's findings were clearly erroneous, reversed and remanded the case to the District Court. United States v Smith 387 F3d 826 (CA 9 Montana 2004)

Although not binding upon this Court the facts speak for themselves, Probation notes, without making a recommendation, that this departure is probably available, and the Government, pursuant to the Plea Agreement agrees to take no position on the defendant's motion to depart based upon aberrant behavior.

## II FAMILY TIES AND RESPONSIBILITIES
### U.S.S.G. Sec. 5H1.6

The defendant has unique family ties and responsibilities in that she had the child of Bryan Moran sometime after being charged with this offense. As stated in the Pre Sentence Report, if in fact the defendant is incarcerated the child, who is otherwise supported and cared for by the defendant would have to be placed in foster care. To take the child away from her mother at the age of several months would be tragic and most likely have lifelong negative effects upon the child for the rest of her life. Additionally, the defendant has undergone vocational training which purports to provide her with a sufficient income to raise and support her child.

## III. MULTIPLE CIRCUMSTANCES
### U.S.S.G. Sec. 5K2.0 ( c )

The defendant relies upon all of the circumstances herein stated as well as those in the Pre Sentence Report. The defendant has clearly committed a crime which is aberrant behavior, has very difficult family and child care issues which arguably deserve a departure pursuant to this section.

## IV. 3553 (a) FACTORS

The First Circuit decided United States v. Jimenez-Beltre, 440 F.3d 514 (1st Cir. 2006), establishing a sentencing protocol – as clearly as can be possible – in the aftermath of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005).

The beginning of the Court's opinion makes it unambiguous that 'reasonableness' is the touchstone of post-Booker sentencing.[1]  Hand-in-glove with that precept, the Court found that the United States Sentencing Guidelines were not "presumptively controlling," and that a Guidelines sentence was *not* "per se reasonable."  440 F.3d 518.   Although the Guidelines are not simply 'another factor' in the process of disposition, "…[they] are still *generalizations*." *Id*., emphasis in original.

"*Booker's* remedial solution makes it possible for courts to impose non-guideline sentences that override the guidelines, subject only to the ultimate requirement of reasonableness." *Id*.

The holding in Booker has permitted the statutory sentencing mandates of 18 U.S.C. §3553 to emerge with new vitality and prominence, where they were, pre-Booker, effectively trumped.  Or at least in part neutralized.  Indeed, in his concurring Opinion, Judge Torruella states unequivocally:

> Finally, I think it is of *critical importance* that the majority opinion be understood to reinforce our commitment to the statutory requirement that, *in all cases*, district courts must impose sentences that are 'sufficient, but not greater than necessary' to effectuate the goals of criminal punishment, as articulated in 18 U.S.C. § 3553(a).  In articulating its reasons for imposing any sentence, the district court must make clear reference to this *central principle*.

Id., at 440 F.3d 521, emphasis supplied.

---

[1]  "[S]entences would be reviewable for reasonableness whether they fell within or without the guidelines." Jimenez-Beltre, at 440 F.3d 517.

In *his* Concurring Opinion, Judge Howard put an even point on it:

> The so-called 'parsimony' provision, which requires that sentences be only as long as necessary to serve the purposes listed in section 3553(a)(2), has received scant attention from courts. Commentators note that this provision '…is not just another "factor" to be considered along with others set forth in Section 3553(a)… -- it sets an independent limit on the sentence a court may impose.'

*Id.*, at 440 F.3d 526, citations omitted. Judge Howard also observed that the 'parsimony' provision is the lead-off language in §3553. It is a charter clause, governing those sentencing provisions which follow it.

For all of the reasons previously stated in this memorandum, should the Court not depart downward under the Guidelines, it certainly should under 18 U.S.C. 3553 (a). The defendant can be sentenced to a period of probation and the Court can still satisfy the need to reflect the seriousness of the offense and to promote respect for the law as well as to provide just punishment for the offense. Clearly the facts demonstrate that the public's need to be protected from the defendant do not require her to be incarcerated, nor is it necessary to incarcerate her in order to deter future conduct of this type. In light of all that has occurred in this case, Ms. Holland by being put on probation has and will suffer serious consequences and difficulties. Additionally, even though the case was reduced to a misdemeanor, she will carry a federal criminal conviction on her record for a significant time to come which may very well affect her ability to work, obtain credit and support her child. The facts and circumstances of this case compel a sentence short of incarceration pursuant to 18 U.S.C. 3553 (a).

        Respectfully submitted,
        CARLI HOLLAND,
        Defendant,
        By Counsel:

        '/s/Walter H. Underhill, Esquire'
        WALTER H. UNDERHILL
        66 Long Wharf
        Boston, Massachusetts  02109
        (617) 523-5858

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

SIGNED:    '/s/Walter H. Underhill, Esquire'
                WALTER H. UNDERHILL, ESQ.

DATED: January 8, 2007